UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ALEJANDRO EDUARDO
DELGADO DE ARMAS,

       Plaintiff,

    v.

WARDEN, FLORIDA SOFT SIDE
SOUTH, IN HIS OFFICIAL
CAPACITY; AND KELIE WALKER,
IN HER OFFICIAL CAPACITY AS
FIELD OFFICE DIRECTOR OF
U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT,
MIAMI FIELD OFFICE,

       Defendants.

Case No. 2:26-cv-2005-KCD-NPM

## **ORDER**

Petitioner Alejandro Eduardo Delgado De Armas has filed a habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement ("ICE"). (Doc. 1.)[1] He claims that his continued imprisonment violates the Fifth Amendment. (*Id.* at 22-23.) Respondents oppose the petition. (Doc. 9.) Petitioner replied. (Doc. 13.) For the reasons below, the petition is **GRANTED**.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

## I. Background

Delgado De Armas is a native of Cuba who entered the United States and was ordered removed in 1998 following a drug trafficking conviction. He was placed on an order of supervision when he could not be deported to Cuba. His supervision was revoked, and he was returned to immigration custody on November 19, 2025. Cuba denied his repatriation, and Respondents state that Delgado De Armas has since failed to comply with removal to Mexico. (Doc. 9-1 ¶ 9.)

## II. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## III. Discussion

The statutory framework for removal works like this: when a noncitizen's removal order becomes final, the government has 90 days to

effectuate removal. 8 U.S.C. § 1231(a)(1)(A). During that period, detention is mandatory. *Id.* § 1231(a)(2)(A). If the 90 days pass and the noncitizen is still here, the statute gives the government a choice: release the individual on supervision or keep them detained. *Id.* § 1231(a)(6).

But as the Supreme Court explained in *Zadvydas v. Davis*, the authority to detain does not stretch into infinity. To avoid serious constitutional problems, the Court read an implicit limitation into the statute: the government may detain a noncitizen only for a period "reasonably necessary" to secure his removal. 533 U.S. at 699. And to make that rule workable, the Court established a presumption. For the first six months, detention is presumptively reasonable. *Id.* at 701. After that period has passed and the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the government to provide evidence sufficient to rebut that showing. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thus, "in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*.

Applied here, Delgado De Armas satisfies the initial temporal requirement. ICE took him into custody over seven months ago. Because the

3

six-month period for presumptively reasonable detention has expired, *Zadvydas*'s burden-shifting framework applies. Delgado de Armas has carried his initial burden by showing a good reason to believe there is no significant likelihood of removal. He does so by pointing to Cuba's refusal to accept him and to the fact that he has received no removal date or travel documents. (Doc. 1 at 13.) Indeed, the Government has had many years to deport Delgado De Armas, and it has failed. This is more than enough reason to believe his removal is nowhere in sight.

The burden thus shifts to the Government to rebut Delgado De Armas' showing, but they fail to do so. *Akinwale*, 287 F.3d at 1052. This outcome should come as no surprise—the record offers no documents, no diplomatic agreements, and no concrete evidence that Delgado De Armas will be removed in the near future. (Docs. 9, 9-1.) Instead, the Government proffers that Delgado De Armas refused removal to Mexico at the border. But it provides no documents—or even details—to substantiate that argument. In fact, the Government states that it is seeking removal solutions for Cuban nationals who have been denied entry into Mexico. (Doc. 9-1 ¶ 13.) It isn't clear how long that process will take. At bottom, because the Government offers nothing to suggest that his removal to Mexico, or anywhere else, is more likely now than it was decades ago, Delgado De Armas must be released.

4

## IV. Conclusion

Because the Government cannot show any real prospect of deportation, the Court finds no significant likelihood that Delgado De Armas will be removed in the reasonably foreseeable future. He is therefore entitled to release from ICE custody under *Zadvydas*. But that release is not a free pass—he remains subject to the strict conditions of his prior order of supervision. To the extent Delgado De Armas raised any other claims, they are denied. He is entitled to no other relief from the facts presented.

Accordingly, it is **ORDERED:**

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** as set forth above.

2. Respondents are ordered to **RELEASE** Petitioner Alejandro Eduardo Delgado De Armas from custody within 48 hours of this Order under the prior conditions of supervision, which Petitioner must continue to comply with. Respondents shall facilitate his transportation from the detention facility by notifying his counsel when and where he can be collected.

3. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**ORDERED** in Fort Myers, Florida on June 30, 2026.

Kyle C. Dudek
United States District Judge